DAVID SANTOS, Plaintiff-Appellant, *v.* STATE OF HAWAII, DEPARTMENT OF TRANSPORTATION, KAUAI DIVISON, et. al., Defendants-Appellees

NO. 7640

(CIVIL NO. 1892)

JUNE 22, 1982

RICHARDSON, C.J., LUM, PADGETT, HAYASHI, JJ. AND RETIRED JUSTICE MENOR IN PLACE OF ASSOCIATE JUSTICE NAKAMURA, RECUSED

*Per Curiam.* This appeal is taken by the Plaintiff-Appellant David Santos from the trial court's Order Granting Summary Judgment in favor of the defendants-appellees. We find no error and affirm the judgment.

To understand this case, we feel that a brief chronicling of some of the events is necessary and helpful.

On September 15, 1975, the appellant applied for a Equipment Operator IV position with the Highways Maintenance Branch, Kauai Division, Department of Transportation, State of Hawaii (hereinafter State). The appellant was an employee of Bargaining Unit I and as such was covered by the Unit I, blue-collar nonsupervisory employees collective bargaining agreement. Jacintho Duarte (Duarte), one of the appellees herein, also applied for the same position. Appellant believed that he was entitled to be promoted to that position because he was the most senior of the employees who applied. However a three-member evaluation panel recommended Duarte for the position, and subsequently Duarte was appointed to that position.

On December 1, 1975, appellant was informed of Duarte's appointment. Ten days later, on December 10, 1975, appellant obtained the services of an attorney, E. Courtney Kahr. Although an exclusive grievance procedure was clearly set forth in the Unit I collective bargainng agreement,[1] appellant did not raise any grievance regarding the promotion under the collective bargaining agreement. Instead, he elected to appeal to the State Civil Service Commission. On January 20, 1976, the Civil Service Commission declined to exercise jurisdiction, determining that appellant's proper remedy was through the grievance procedure in his Unit I contract. However, by that time, the period for filing a grievance under the contract had expired. On February 24, 1976, appellant appealed to the Hawaii Public Employment Relations Board (HPERB), charging that the State had engaged in prohibited practices, in violation of Hawaii Revised Statutes (HRS) § 89-13(a) and at the same time charged that the United Public Workers (UPW) engaged in unfair practices by interfering with his right to file a grievance.

HPERB then proceeded to hold a lengthy four-day hearing on the merits of the charges and determined that "the State did not

---

[1] Section 15. GRIEVANCE PROCEDURE

15.01 It shall be the intention of the parties that *any* grievance which arises out of alleged Employer violation, misinterpretation, or misapplication of the Agreement, its attachments, exhibits, and appendices, hereafter referred to as the Agreement, *shall* be resolved in accordance with provisions set forth herein. [Emphasis added.]

make reasonable efforts to ascertain the relative qualifications of Santos and Duarte; and its selection of Duarte over Santos was, therefore, unjustified. Accordingly, the Board holds that the State violated Section 16.06[2] of the Unit 1 collective bargaining agreement, thereby committing a prohibited practice under sec. 89-13(a)(8),[3] HRS." (Footnote added.) HPERB then ordered the State to redo the selection for the Equipment Operator IV position.

As to the charges against the UPW, HPERB ruled that it could find no unlawful interference in the nature of undue influence or collusion by the union, either in the grievance procedure or in the promotion process, and dismissed all breach of duty of fair representation charges against UPW.

The State appealed HPERB's decision to the Circuit Court of the First Circuit.[4] The court reversed HPERB on the grounds that HPERB should have deferred to the grievance procedure set forth in the Unit 1 contract. Santos never appealed either HPERB's decision regarding the UPW[5] or the circuit court's decision regarding

---

[2] 16.06
   a. When making promotions, one of the following options shall be utilized:
      1. Non-competitive promotion
      2. Intra-departmental competitive promotion
      3. Inter-departmental competitive promotion
   b. For non-competitive promotions, all notices to fill authorized vacancies shall be posted on appropriate bulletin boards for at least ten (10) calendar days prior to the closing date for receipt of applications. If the Employer does not post the notices for the specified number of days as provided in this section or in the personnel rules and regulations, the employee shall be entitled to submit a late application.
   c. Whenever the qualifications between the qualified applicants are relatively equal, the employee with the greatest length of Baseyard, Workplace or Institution Workplace seniority shall receive the promotion.
   d. In the event a senior employee applies for a promotion and is denied the promotion, if he so requests, he shall be given a written statement of the reasons for denial.

[3] HRS § 89-13(a)(8)
   [§ 89-13] *Prohibited practices; evidence of bad faith.* (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:
      (8) violate the terms of a collective bargaining agreement.

[4] *Dept. of Trans. v. HPERB & Santos,* Civil No. 51437 (1st Cir. Ct. Hawaii, Mar. 21, 1979).

[5] The circuit court's review of decisions by administrative agencies is governed by HRS § 91-14(g) (1976).

the State.[6]

On July 20, 1977, appellant filed an action for injunctive and declaratory relief in the Circuit Court of the Fifth Circuit[7] regarding the State's improper promotion of Duarte when Duarte allegedly falsified his application. On May 25, 1978, the court issued an order as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1) The State of Hawaii, Office of the Attorney General is mandated to investigate the alleged illegality of the employment of Jacintho Duarte, and if appropriate and applicable, to prosecute the enforcement of the law, more specifically Hawaii Revised Statutes sections 76-12, 76-29 and 26-7.

2) The State of Hawaii, Department of Personnel Services, is not mandated to carry out the provisions of Hawaii Revised Statutes, section 76-48, since Plaintiff did not exhaust the remedies available to him.

On February 14, 1979, the court dismissed the action against the State attorney general after the filing of his investigative report. Again, no appeal was taken by appellant.

In addition to the action for injunctive and declaratory relief filed by appellant in the Circuit Court of the Fifth Circuit on July 20, 1977, on the same date appellant instituted the instant action in circuit court seeking to overturn the promotion of Duarte and to obtain damages from the State, the UPW, their representatives, and Duarte. Appellees filed motions for summary judgment on the grounds that appellant's action should be barred because he failed to exhaust his contractual and administrative remedies or, alternatively, because the doctrines of *res judicata* and collateral estoppel applied as he had already had his day in court. The circuit court granted appellees' motions. This appeal followed.

The doctrines of *res judicata* and collateral estoppel provide that the judgment of a court of competent jurisdiction is a bar to a new action in another court between the same parties or their privies

---

[6] Our review of the circuit court's review of decision by administrative agencies is governed by HRS § 91-15 (1976).

[7] *Santos v. Amemiya,* Civ. No. 1891 (5th Cir. Ct. Hawaii, Mar. 21, 1979).

concerning the same subject matter. It precludes the relitigation, not only of the issues that were actually litigated in the first action, but also of all grounds of claim and defense which might have been litigated in the first action but were not litigated or decided. *Gomes v. Tyau,* 57 Haw. 163, 167-68, 552 P.2d 640, 643 (1976); *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 422-23, 539 P.2d 472, 475 (1975); *Ellis v. Crockett,* 51 Haw. 45, 55, 451 P.2d 814, 822 (1969); *In Re Bishop Estate,* 36 Haw. 403, 416 (1943).

The *res judicata* and collateral estoppel doctrines have been articulated by this court in *Gomes v. Tyau, supra.*

> Consequently, under traditional rules plaintiff may be barred from pursuing successive suits where the same issue has been litigated or could have been litigated.
>
> But in applying the doctrine of collateral estoppel we have in this jurisdiction partially abandoned the traditional requirement of identity of parties. In *Ellis v. Crockett,* 51 Haw. 45, 451 P.2d 814 (1969), we stated:
>
> > "Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies. *Yuen v. London Guarantee and Accident Co.,* 40 Haw. 213, 223 (1953); *Henderson v. Pence,* 50 Haw. 162, 163, 434 P.2d 309, 310 (1967). Collateral estoppel also precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue."
>
> *Id.,* 51 Haw. at 55-56, 451 P.2d at 822. We applied the doctrine of collateral estoppel most recently in *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 539 P.2d 472 (1975), where we held:
>
> > "[W]e will not permit a plaintiff to have another opportunity to rehash the same claim the second time around by switching adversaries. Plaintiff through his own choosing is now precluded in the present action under the doctrine of collateral estoppel from relitigating the same issue [whether a ramp had been negligently constructed] which was determined by the judgment in the first action." *Id.,* 56 Haw. at 424, 539 P.2d at 476.

*Id.* at 167-68, 552 P.2d at 643.

This court also explained the policy reason underlying *res judicata* and collateral estoppel in *Ellis v. Crockett, supra.*

> The policy reasons underlying both *res judicata* and collateral estoppel are several. The public interest staunchly permits every litigant to have an opportunity to try his case on the merits; but it also requires that he be limited to one such opportunity. Furthermore, public reliance upon judicial pronouncements requires that what has been finally determined by competent tribunals shall be accepted as undeniable legal truth. Its legal efficacy is not to be undermined. Also, these doctrines tend "to eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results." *Developments in the Law — Res Judicata,* 65 Harv. L. Rev. 818, 820 (1952).

*Id.* at 56, 451 P.2d at 822.

The three critical issues in determining whether the principles of *res judicata* and collateral estoppel are applicable are:

> Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Morneau v. Stark Enterprises, Ltd., supra,* 56 Haw. at 424, 539 P.2d at 475.

The doctrines of *res judicata* and collateral estoppel also apply to matters litigated before an administrative agency. *United States v. Utah Constr. Co.,* 384 U.S. 394, 421-22 (1966). *International Wire v. Local 38, International Brotherhood of Electrical Workers,* 475 F.2d 1078 (6th Cir. 1973); *Texaco, Inc. v. Operative Plasterers & Cement Masons International Local 685,* 472 F.2d 594 (5th Cir. 1973); *Paramount Transport Systems v. Chauffeurs, Teamsters & Helpers Local 150,* 436 F.2d 1064 (9th Cir. 1971); *Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081 (5th Cir. 1969). In the instant action, appellant charges that the State and a number of its representatives breached the collective bargaining agreement, violated HRS § 76-29 in failing to remove Duarte from his position when he allegedly falsified his application, acted to intentionally cause appellant to suffer emotional distress, and conspired to cause appellant emotional distress and deny appellant due process.

At the heart of appellant's complaint is the allegation that the State wrongfully appointed Appellee Duarte to the Equipment Operator IV position over appellant when appellant was more qualified, and that the UPW denied appellant fair representation, thus excusing appellant from resorting to the contractual grievance procedure before instituting an action in court. This is precisely what appellant charged and litigated in the HPERB action, where appellant specifically charged that:

> The State Department of Transportation, Kauai Division, promoted Jacintho Duarte, relative of Ernest Duarte, one of the three examining officers, to the position of Equipment Operator IV on 12-1-75, in violation of the collective bargaining agreement Unit One, UPW Local 646, provision 16.06[8] and 16.07,[9] since Mr. Santos is more highly qualified and experienced and Mr. Duarte did not meet the minimum requirements. This is in violation of Hawaii Revised Statutes 89-13(a)(8),[10] as amended.

> The UPW, through its agent Gary Rodrigues, told Mr. Santos that he was not entitled to union representation as he paid only a service fee. It has in fact held union meeting excluding Mr. Santos, refused to allow him to join, and never gave him a copy of the contract. As for the above particular grievance against the state, no grievance was filed by Mr. Santos as he did not know he could do so, due to the union's lack of representation of his interests. These are violations of HRS 89-13(b)(1), (3), and (5).[11]

[Footnotes added.]

---

[8] *Supra,* n.3.

[9] 16.07 With respect to tests and/or examination used for promotional purposes, the Employer assures the Union that continuing efforts will be made to devise such test and/or examinations that directly relate the tests and/or examination to the skills, abilities, and qualifications actually required for the class.

[10] *Supra,* n.4.

[11] HRS § 89-13(b)(1), (3), (5)

(b) It shall be a prohibited practice for a public employee or for an employee organization or its designated agent wilfully to:

    (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

    (3) Refuse to participate in good faith in the mediation, fact-finding and arbitration procedures set forth in section 89-11;

    (5) Violate the terms of a collective bargaining agreement.

It is the general rule that before an individual can maintain an action against his employer, the individual must at least attempt to utilize the contract grievance procedures agreed upon by his employer and the UPW. *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965). The rule is in keeping with prevailing National Labor Relations policy and Hawaii policy favoring arbitration as a dispute settlement mechanism. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior Gulf Co.*, 363 U.S. 574 (1960); *Steelworkers v. Enterprise Wheel Car Corp.*, 363 U.S. 593 (1960); *Gregg Kendall & Assoc., Inc. v. Kauhi*, 53 Haw. 88, 488 P.2d 136 (1971).

The rule was specifically adopted in *Winslow v. State*, 2 Haw. App. 50, 625 P.2d. 1046 (1981), a case recently decided by the Intermediate Court of Appeals. In *Winslow*, the plaintiff, although initially filing a grievance pursuant to the grievance procedure established under contract, did not follow it through, instead instituting an action in circuit court alleging essentially the same claims raised in the grievance. The lower court granted the employer's motion for summary judgment. In affirming the lower court's ruling as to the employer, the court of appeals said,

> [W]e hold that where the terms of public employment are covered by a collective bargaining agreement pursuant to HRS Chapter 89 and the agreement includes a grievance procedure to dispose of employee grievances against the public employer, an aggrieved employee is bound by the terms of the agreement.

*Winslow v. State, supra,* at 55, 625 P.2d at 1050.

Similarly, in the instant action, even though a grievance procedure was provided by contract, appellant chose not to utilize it, appealing instead to the Civil Service Commission and when that failed, to HPERB.[12]

Appellant argues that although the general rule would require exhaustion of contractual remedies as a prerequisite to bringing his action against the State, he need not make an attempt to exhaust contractual remedies when it can be shown that the union would not fairly represent him.

---

[12] In *Winslow v. State, supra*, it was held that under HRS § 89-14 prohibited practices whether committed by the employer, employee, or employee organization can be taken before HPERB or in a court of competent jurisdiction.

This is the very issue that HPERB had to decide before making any ruling against the State on the prohibited practice breach of contract charge, and which the First Circuit had to examine before reversing HPERB. The First Circuit judgment that appellant could not bring an action against the State without first having exhausted his contractual remedies became final when appellant did not appeal the same and the time provided for such appeal expired. Thus, appellant is barred from relitigating that issue.

Appellant also charges that the UPW and its representatives breached the terms of the collective bargaining agreement; interfered, restrained, and coerced appellant from exercising his rights under HRS § 89-3; breached their fiduciary duty to appellant; discriminated against appellant; acted to intentionally cause appellant to suffer emotional distress; and conspired to cause appellant emotional distress and deny appellant due process.

As in the case of the charges against the State, appellant's charges against the UPW and its representatives are based on the same allegations set forth in the HPERB action. However, HPERB could only consider claims that were brought within 90 days of the complained of action (HRS § 377-9(1)) and a number of the charges in appellant's complaint against the UPW were dependent upon actions that had occurred prior to December 1, 1975, and, thus, not within 90 days of his filing on February 25, 1976.

The complaints against the UPW based on actions occurring after December 1,1975, were timely and properly within HPERB's jurisdiction. After four days of extensive hearings, HPERB ruled that the UPW had not committed any prohibited practice between December 1, 1975, and March 1, 1976. This decision was never appealed by appellant and became final when the time alloted for appeals had expired. None of the parties have questioned the procedures followed by HPERB or the capacity in which it was acting. Thus, appellant is barred from relitigating any issues regarding the UPW's alleged committing of prohibited practices between December 1, 1975, and March 1, 1976. *United States v. Utah Constr. Co., supra.*

While the complaint against the UPW based on its actions prior to December 1, 1975, were not directly considered by HPERB, appellant's complaint against the State was timely filed and as we said earlier, before HPERB could act on a complaint against the State

when the grievance procedures were not utilized, HPERB was required to and did properly consider whether the UPW had acted to deny appellant fair representation, thus, making resort to the grievance procedure an inadequate or futile remedy.

HPERB did, in fact, make specific findings as to the UPW's actions prior to December 1, 1975: HPERB found that Santos resigned from the union between 1966 and 1970 after a disagreement with Appellee Rodrigues, UPW's business agent; that Santos wanted to rejoin the union in 1973, but Appellee Rodrigues did not inform him of the proper procedure to follow; and that Santos believed that as a nonmember he was not entitled to union representation, based on statements made by Appellee Rodrigues at a union meeting. These are the very actions which appellant now points to to support his claims against the UPW and their representatives.

However, as we have already said, the circuit court found that the UPW's actions were not such as to excuse appellant from seeking relief under the contractual grievance procedure.

That decision is final and binding on appellant, and is not open for reconsideration.

Lastly, appellant charges that Appellee Duarte violated HRS § 76-29 by falsifying his application for the Equipment Operator IV position.

HRS § 76-29 provides that "No person who has committed or attempted any deception or fraud in connection with any application or examination, shall be eligible for any appointment in the civil service." Thus, the question that must be resolved before any action may be taken against Appellee Duarte is whether he did falsify his application.

This was the very question that was litigated in *Santos v. Amemiya, supra*, in which appellant instituted action against the State's attorney general for failing to prosecute Duarte as he was required to under HRS § 26-7,[13] and against the State's director of personnel for failing to investigate Duarte and enforce HRS § 76-29.

---

[13] HRS § 26-7

§26.7 *Department of the attorney general.* The department of the attorney general shall be headed by a single executive to be known as the attorney general.

The department shall . . . , unless otherwise provided by law, prosecute cases involving violations of state laws and cases involving agreements, uniform laws, or other matters which are enforceable in the courts of the State.***

On May 24, 1978, the circuit court mandated that the attorney general investigate Santos' allegations as to the falsity of Duarte's application and if true, to prosecute Appellee Duarte and decreed "that the State of Hawaii, Department of Personnel Services, is not mandated to carry out the provisions of Hawaii Revised Statutes, section 76-48, since Plaintiff did not exhaust the remedies available to him."

Later on February 14, 1979, the circuit court dismissed the case against the attorney general after the attorney general's filing of his investigative report. A dismissal, without more is considered an adjudication on the merits under HRCP Rule 41(b).[14] No appeal was taken from the dismissal.

Appellee Duarte, although not a party to the previous action nor a privy of a party in such action, can raise collateral estoppel defensively to preclude appellant who was a party to the previous suit and who raised the issue of the falsity of Duarte's application from relitigating that issue. *Ellis v. Crockett, supra; Bernhardt v. Bank of America Nat'l Trust and Savings Ass'n.,* 19 Cal.2d 807, 122 P.2d 892 (1942).

Finding no error, we affirm the judgment.

*E. Courtney Kahr* on the briefs for plaintiff-appellant.

*Lawrence D. Kumabe,* Deputy Attorney General, on the brief for State defendants- appellees.

*James A. King (King & Nakamura,* Attorneys at Law, A Law Corporation, of counsel) on the brief for defendants-appellees, United Public Workers, Local 646, AFSCME, AFL-CIO, Gary Rodrigues and Jacintho Duarte.

---

[14] HRCP Rule 41(b)

***Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.