**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000048
23-MAY-2023
07:58 AM
Dkt. 192 MO**

NO. CAAP-18-0000048

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ASSOCIATION OF APARTMENT OWNERS OF
PACIFIC MONARCH, INC., a Hawaiʻi non-profit corporation,
Plaintiff-Appellee,
v.
CLARENCE O. FURUYA and LONA LUM FURUYA,
Defendants-Appellants,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE ENTITIES 1-10;
and DOE GOVERNMENTAL ENTITIES 1-10, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2344)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Wadsworth and McCullen, JJ.)

Defendants-Appellants Clarence O. Furuya (**Clarence**) and Lona Lum Furuya (collectively, **the Furuyas**) appeal from the "Judgment," filed on October 6, 2017, by the Circuit Court of the First Circuit (**Circuit Court**).[1] The Furuyas challenge the following: (1) an "Order Denying Defendants Clarence O. Furuya and Lona Lum Furuya's Motion for Summary Judgment," filed April 20, 2017 (**Order Denying Summary Judgment to Furuyas**); (2) an "Order Granting Plaintiff Association of Apartment Owners of Pacific Monarch, Inc.'s Motion for Summary Judgment Against Defendants Clarence O. Furuya and Lona Lum Furuya on Plaintiff's First Amended Complaint," filed May 24, 2017 (**Order Granting**

_____

[1] The Honorable Gary W.B. Chang presided.

**Summary Judgment to AOAO**);[2] and (3) an "Order Granting in Part and Denying in Part 'Plaintiff Association of Apartment Owners of Pacific Monarch, Inc.'s Motion for Award of Attorney's Fees and Costs Against Defendants Clarence O. Furuya and Lona Lum Furuya'," filed December 27, 2017 (**Award of Fees and Costs**).

On appeal, the Furuyas contend the Circuit Court erred by granting summary judgment to Plaintiff-Appellee Association of Apartment Owners of Pacific Monarch, Inc. (**AOAO**) based on preclusion grounds, thereby voiding the Furuyas' transfer of 106 parking stalls that are appurtenant to a unit in which the Furuyas have a leasehold interest, to a unit in which they own the fee interest.  The Furuyas also contend the Circuit Court improperly granted attorneys' fees and costs to the AOAO.

### I.  Background

The present suit is part of a lengthy battle between the Furuyas and the AOAO over the parties' respective rights to Apartment Unit 3206 (**Unit 3206**) and 106 parking stalls appurtenant to Unit 3206 at the Pacific Monarch, a condominium project in Waikīkī.[3]

In a prior lawsuit, the Furuyas filed suit against the AOAO, claiming they had a right to purchase the AOAO's leased fee interest in Unit 3206 and the 106 parking stalls, pursuant to a contract.  Clarence Furuya, et al, v. Ass'n of Apartment Owners of Pacific Monarch, Inc., et al., Civil No. 06-1-1057-06 (**Furuya I**).[4]  The circuit court ruled against the Furuyas in a jury-

---

[2]  An amended order and amended judgment were issued by the Circuit Court to correct an inadvertent error in the initial order and judgment. Therefore, the Furuyas also appeal the "First Amended Order Granting Plaintiff Association of Apartment Owners of Pacific Monarch, Inc.'s Motion for Summary Judgment Against Defendants Clarence O. Furuya and Lona Lum Furuya on Plaintiff's First Amended Complaint," filed on July 24, 2018, and the "Amended Final Judgment," filed on July 25, 2018.

[3]  Pursuant to the Declaration of Horizontal Property Regime (**Declaration**) and Restated Declaration of the Association of Apartment Owners of Pacific Monarch (**Restated Declaration**), parking elements, including parking stalls, are appurtenant to a unit.  Thus, the 106 parking stalls are appurtenant to Unit 3206.

[4]  The Honorable Rom A. Trader presided.

waived trial, finding that although the Furuyas own the fee to Apartment Unit 3207 (**Unit 3207**) at the Pacific Monarch, they only acquired a leasehold interest in Unit 3206 and the appurtenant 106 parking stalls because they failed to "purchase the fee interest for 3206 and the 106 parking stalls attached to it." Moreover, the circuit court found the AOAO was "the rightful owner of the leased fee interests that were not purchased by the FURUYAS[,]" *i.e.*, Unit 3206 and the 106 parking stalls.

The Furuyas appealed in <u>Furuya I</u>, and while that appeal was pending in this court, the Furuyas sought to transfer the 106 parking stalls to Unit 3207 through an "Amendment of Restated Declaration of the Association of Apartment Owners of Pacific Monarch and Condominium Conveyance Documents To Reflect Transfer of Parking Stalls and Parking Elements from Apartment No. 3206 to Apartment No. 3207" (**Transfer Amendment**).[5] The Transfer Amendment did not specify whether the Furuyas were purporting to transfer a leasehold or fee simple interest in the stalls to Unit 3207.[6]

---

[5]  The Transfer Amendment provides, in relevant part:

> WHEREAS, CLARENCE O. FURUYA and LONA LUM FURUYA (hereinafter collectively referred to as the "Furuyas"), are the owners of those certain Apartments Nos. 3206 and 3207 (together with the undivided interests in the common elements) in the Pacific Monarch condominium project . . . .
>
> . . . .
>
> NOW, THEREFORE, the Furuyas, as grantor and as grantee, hereby join in agreement that the Declaration and the CCDs are hereby amended as follows:
>
> 1. The Parking Stalls be and are hereby transferred and conveyed from Apartment No. 3206 together with the Remaining Portions of the Parking Element thereto appurtenant to Apartment No. 3207.
>
> 2. Pursuant to Section 1A of the CCD for Apartment No. 3206, the Furuyas, in their capacity as the owners of Apartment No. 3207 hereby assume the pro rata additional rental obligation for the Parking Stalls.

[6]  Pursuant to the terms of the Transfer Amendment, it became effective upon recordation in the Bureau of Conveyances of the State of Hawaiʻi on September 22, 2011.

On August 27, 2013, the AOAO initiated this lawsuit, filing a Complaint (**2013 Complaint**) against the Furuyas in the Circuit Court.  On February 7, 2014, the AOAO filed a First Amended Complaint.  The 2013 Complaint and First Amended Complaint both asserted claims for declaratory and injunctive relief and sought, among other things, a determination that the Transfer Amendment did not convert the Furuyas' leasehold interest in the parking stalls to a fee simple interest and that the Transfer Amendment be amended to reflect the Furuyas' actual interest in the stalls.  Alternatively, the First Amended Complaint requested that the Transfer Amendment be deemed null and void.

In their answer to the First Amended Complaint, the Furuyas denied that the AOAO was the fee simple owner of Unit 3206 and that the Condominium Conveyance Document (**CCD**) for Unit 3206 conveyed only a leasehold interest in the unit and parking stalls to the Furuyas.  The Furuyas further denied they could only convey a leasehold interest in the parking stalls via the Transfer Amendment.

The Furuyas alleged that the interest in Unit 3206 and the appurtenant parking stalls "conveyed by the Building Conveyance [section of the CCD] including the parking and parking easements was in fee and the interest conveyed by the Ground Conveyance was leasehold" and "den[ied] that the Parking Elements [would] revert to the Association" upon expiration of the leasehold in 2054.

Two months after the AOAO filed the First Amended Complaint in this case, this court decided <u>Furuya I</u> by affirming in part the circuit court's decision and holding that the AOAO had no obligation to sell the leased fee interest in Unit 3206 and the parking stalls.[7]  <u>Furuya v. Ass'n of Apartment Owners of Pac. Monarch, Inc.</u>, No. 30485, 2014 WL 1658331, at *16 (Haw. Ct. App. Apr. 25, 2014) (mem.).  On further appeal to the Hawaiʻi

---

[7]  This court vacated a portion of the circuit court's Findings of Fact, Conclusions of Law and Order only as it pertained to the Furuyas' claim for unjust enrichment from the use of certain parking stalls.  <u>Furuya I</u>, 2014 WL 1658331, at *16 (mem. op.).

Supreme Court in Furuya I, the Furuyas maintained they had an enforceable contract with the AOAO to purchase the leased fee interest in Unit 3206 and the 106 parking stalls. Furuya v. Ass'n of Apartment Owners of Pac. Monarch, Inc., 137 Hawaiʻi 371, 374, 383, 375 P.3d 150, 153, 162 (2016). The supreme court affirmed the ICA's decision, concluding the record supported the circuit court's findings that the Furuyas were not ready, willing and able to perform on the contract to purchase the AOAO's leased fee interest in Unit 3206 and the stalls. Furuya I, 137 Hawaiʻi at 384-86, 375 P.3d at 163-65.

On November 23, 2016, following the Hawaiʻi Supreme Court's decision in Furuya I, the Furuyas and the AOAO each filed motions for summary judgment in the present case. The Circuit Court granted summary judgment for the AOAO and denied summary judgment for the Furuyas. In the Order Granting Summary Judgment to the AOAO, the Circuit Court ordered that the Transfer Amendment be "abrogated, set aside, invalidated, and rendered void and of no legal force and effect, ab initio." The Circuit Court further concluded that "the Transfer Amendment was never authorized" and never "had the force or effect of transferring the ownership of any or all 106 parking stalls or parking elements, to which the Transfer Amendment referred, from Apartment No. 3206 to Apartment No. 3207 . . . ."

## II.  Discussion

### A. The Furuyas Are Precluded from Relitigating Their Interest in Unit 3206 and the 106 Parking Stalls

On appeal, the Furuyas allege the Circuit Court erred in basing the Order Granting Summary Judgment to the AOAO on *res judicata* grounds and for "other good cause[.]" The Furuyas argue the Circuit Court abused its discretion by granting summary judgment on *res judicata* grounds *sua sponte* because the Furuyas did not have an opportunity to brief the issue. The AOAO contends the Furuyas misstate the Circuit Court's ruling because the court "did not *sua sponte* limit its decision to the doctrine of *res judicata* or claim preclusion."

The Furuyas also argue the Circuit Court erred in granting summary judgment to the AOAO on collateral estoppel (issue preclusion) grounds, contending the AOAO failed to establish all the elements of collateral estoppel.

1.  **The Circuit Court did not err in ruling based on collateral estoppel (issue preclusion)**

The Circuit Court stated during the hearing on both motions for summary judgment:

> Okay. This case is a little odd, because the plaintiffs are urging upon the Court some theories, like estoppel, that are not classically applicable here, because we have in this case not one single proceeding, but we have multiple proceedings. We have a 2006 case, and the instant 2013 case. So there are some difficulties applying the classic judicial estoppel principles.
>
> Then you have res judicata. And I suppose -- and <u>collateral estoppel</u>. And I suppose it is the offensive use of collateral estoppel as a sword against the Furuyas in this case, because the Association is the plaintiff in this case, trying to use the prior adjudication.
>
> And I am not foreclosing the possibility that judicial estoppel may very well apply. But I did want to note the reservation that we have multiple proceedings here. And I'm not seeing authority that applies judicial estoppel to multiple or successive proceedings. So it may or may not apply. But I'm looking at collateral estoppel, and  res judicata more particularly.
>
> When we look at the identity of issues, I think that you have to bear in mind the rationale behind the res judicata or collateral estoppel doctrines. And the purpose of the -- those doctrines are to preclude multiplicity of litigation, et cetera. And we have two cases that are very closely related.

(Emphasis added.)  In making its ruling, the Circuit Court then stated:

> So I do believe that <u>the question of the ownership of the parking stalls was essential to the final judgment</u>. It definitely was essential to the final judgment at trial. And even on appeal, there were enough references to at least the bylaws, the restated bylaws, to satisfy the element of identity of issues. And, of course, all of the other requirements of res judicata are met as well.
>
> So I am not confining the Court's ruling only to <u>res judicata, but any other good cause</u>, including perhaps the doctrine of judicial estoppel. I'm not foreclosing that as a basis to uphold this decision.

(Emphases added.)  The Circuit Court did not base its decision to grant summary judgment to the AOAO on *res judicata* grounds alone,

but on other grounds as well, including judicial estoppel and collateral estoppel (issue preclusion), both of which the AOAO argued below and which the Furuyas had the opportunity to brief.

### 2. The AOAO established the elements of collateral estoppel

"Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are [separate] doctrines that limit a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy." Bremer v. Weeks, 104 Hawaiʻi 43, 53, 85 P.3d 150, 160 (2004) (citing Dorrance v. Lee, 90 Hawaiʻi 143, 148-49, 976 P.2d 904, 909-10 (1999)). "Issue preclusion . . . applies to a subsequent suit between the parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action." Dorrance, 90 Hawaiʻi at 148, 976 P.2d at 909 (citation omitted).  The elements of issue preclusion are:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

Bremer, 104 Hawaiʻi at 54, 85 P.3d at 161.

The central focus of whether issue preclusion is satisfied here is whether the issue in the prior suit and the case at bar are identical and whether the issue in the prior suit was essential to the final judgment.[8]  The Furuyas argue that the

---

[8]  The second element of the issue preclusion test, *i.e.*, a final judgment on the merits, is satisfied.  The Furuyas fully litigated Furuya I through a bench trial in the circuit court and then in appeals to this court and the supreme court.  See Dorrance v. Lee, 90 Hawaiʻi at 150, 976 P.2d at 911 (final judgment from previous proceeding was "on the merits" where appellant had opportunity to fully defend claims).

The fourth element, *i.e.*, the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication, is also satisfied.  The Furuyas are the parties against whom issue preclusion is asserted and were the plaintiffs-appellants in Furuya I.

Circuit Court did not actually decide an identical and dispositive issue because the Circuit Court's decision here pertained to the Furuyas' ability to transfer the 106 parking stalls, which the lower court did not address in Furuya I. According to the Furuyas, although the Circuit Court "noted the Furuyas' argument that 'the Association does not have a leased-fee interest in parking,'" the court "[did] not clearly identify any issue decided relating to that claim" and further "failed to connect a precise issue in the fee sale dispute with any matter dispositive of the Furuyas' rights in the transfer suit."

The Hawaiʻi Supreme Court has determined that an issue is identical for the purposes of issue preclusion where an issue had to be decided in a previous action and the court would need to decide that same previously addressed issue in the present case. Santos v. State, Dep't of Transp., Kauai Div., 64 Haw. 648, 646 P.2d 962 (1982) (per curiam). In Santos, the appellant failed to follow the required grievance process in a collective bargaining agreement when claiming he was improperly denied a promotion over a junior employee. Id. at 649, 646 P.2d at 963-64. Appellant appealed to the Hawaii Public Employment Relations Board (**HPERB**) after his first appeal was declined by the civil service commission for failure to follow the proper grievance procedure and the time to file a proper grievance had expired. Id. After a hearing on the merits, HPERB determined that denying the appellant the promotion violated the collective bargaining agreement and ordered the state to redo the selection. Id. at 649-50, 646 P.2d at 964. On appeal, however, the circuit court reversed HPERB's decision in favor of the state on grounds that HPERB should have deferred to the grievance process of the collective bargaining agreement. Id. at 650, 646 P.2d at 964. The appellant did not further appeal the case. Id. at 650-51, 646 P.2d at 964.

The appellant then initiated a new action, claiming the state breached the collective bargaining agreement by failing

8

to remove the junior employee from the position for allegedly falsifying his application, intentionally causing the appellant emotional distress, and denying the appellant due process.  Id. at 653, 646 P.2d at 966.  The defendants filed motions for summary judgment on grounds of, among other things, issue preclusion, which the lower court granted.  Id. at 651, 646 P.2d at 965.  The Hawaiʻi Supreme Court determined issue preclusion applied where the issue at bar was whether the appellant was required to exhaust contractual remedies in bringing the new suit, which was "the very issue that HPERB had to decide before making any ruling against the State on the prohibited practice breach of contract charge, and which the First Circuit had to examine before reversing HPERB."  Id. at 655-56, 646 P.2d at 967.

Here, a key issue in this case is the same as a previously litigated issue in Furuya I, specifically the Furuyas' rights to the 106 parking stalls.  In Furuya I, the circuit court determined, in relevant part:

> 2.    . . . . [O]n Plaintiffs' Count V for declaratory relief . . . the Court hereby declares that: (I) the Association is the legal and beneficial owner of the leased fee interests to the Apartment Unit 3206 and the 106 Parking Stalls; and (ii) the Association is not legally or morally obligated to sell the leased fee interests to the Apartment Unit 3206 and the 106 Parking Stalls to Plaintiffs[.]
>
> . . . .
>
> 5.    . . . . [T]he Association is the legal and beneficial owner of the leased fee interests to the Apartment Unit 3206 and the 106 Parking Stalls and that the Association is not obligated to sell the leased fee interests to the Apartment Unit 3206 and the 106 Parking Stalls to Plaintiffs that the counterclaim for Breach of Contract/Promissory Estoppel (Counterclaim IV) is moot[.]

(Emphases added.)

In affirming the ICA's review of Furuya I, the Hawaiʻi Supreme Court quoted Plaintiff's Proof of a Prima Facie Case § 7:2.50 for the following proposition: "[i]f real estate is encumbered by a lease, the ownership interest in that property is considered a leased fee interest rather than a fee simple interest because 'the possessory interest has been granted to another party by creation of a contractual landlord-tenant

relationship (i.e., a lease).'"  Furuya I, 137 Hawaiʻi at 373 n.2, 375 P.3d at 152 n.2.

In explaining the issue in the appeal, the supreme court stated:

> The heart of the dispute in this case is whether there was an enforceable contract for the purchase of the leased fee interest in unit 3206 and the parking stalls, and whether following the signing of the DROA, the Furuyas elected not to purchase the leased fee interest in the parking stalls.

Id. at 374, 375 P.3d at 153.

The supreme court also explained:

> In sum, because—based on the circuit court's findings—the Furuyas failed to demonstrate they were ready, willing, and able to perform on the contract throughout the contract term, their claim for specific performance fails. . . . The fact that the Furuyas came forward in 2004, approximately seven years after the initial closing date of the DROA, and stated that they were ready to close on the DROA and that they had always wanted to purchase the leased fee interest in unit 3206 along with the appurtenant stalls was considered and rejected by the circuit court. Substantial evidence in the record supports the circuit court's conclusion that prior to the closing of the DROA, the Furuyas changed their minds and were not prepared to pay the $459,131.19 for the parking stalls. Accordingly, the Furuyas have failed to demonstrate error in the circuit court's decision.

Id. at 386, 375 P.3d at 165.  In Furuya I, the supreme court rejected the Furuyas' claim that the AOAO had breached a contract to sell the leased fee interest in Unit 3206 and the appurtenant 106 parking stalls to the Furuyas, and also rejected the Furuyas' claim that they were entitled to specific performance.  The supreme court's decision in Furuya I thus clearly established that the Furuyas did not have any rights to the leased fee interest in Unit 3206 and the appurtenant 106 parking stalls.

In the instant case, before reaching the issue of whether the Furuyas could transfer the leased fee interest in the 106 parking stalls from Unit 3206 to Unit 3207, it is necessary to address the Furuyas' rights to the parking stalls.[9]  The

---

[9]  Although the Transfer Amendment does not explicitly state the interest in the 106 parking stalls being transferred to Unit 3207, the Furuyas' answer to the AOAO's First Amended Complaint expresses the Furuyas' position that they transferred a leased fee interest in the stalls.

Furuyas claim the transfer is proper because "the apartments and the appurtenant parking were conveyed in fee simple [to them] and the only interest leased was the land . . . ."

Section 6 of article IV in the CCD provides, in relevant part:

> 6. <u>Assignment and Subletting.</u> The Apartment Owner may assign, mortgage or sublet the interests conveyed hereunder, without approval or consent of Developer; <u>and the assignee or sublessee shall have the same rights and obligations hereunder as the original Apartment Owner; PROVIDED, HOWEVER, that any assignment or sublease shall provide that the assignee or sublessee undertakes to perform all the obligations of Apartment Owner hereunder.</u>

(Emphases added) (format altered). Although the Declaration[10] and Restated Declaration[11] permit the transfer of the 106 parking stalls to another unit, the CCD explicitly states that the Furuyas' assignee(s) can only possess the same rights as the

---

[10]  The Declaration provides, in relevant part:

(2) <u>Parking Elements</u>. The following limited common elements ("parking elements") are shown in green on the Condominium Map:

> a. parking stalls on the 1st, 2nd, 3rd, 4th and 5th floors of the building numbered 1 through 106 on the Condominium Map, which are appurtenant to and for the exclusive use of Apartment 3206. The Apartment Owner of any apartment to which any parking stall is appurtenant shall have the right from time to time with the consent of his mortgagee, if any, to transfer such parking stall to another Apartment in the Project by joining, with the Apartment Owner of such other Apartment, in an amendment of this Declaration and their respective condominium conveyance documents. Such amendment shall be effective only upon recording the same of record in the Bureau of Conveyances. Developer hereby gives its irrevocable consent to all such parking stall transfers.

[11]  The Restated Declaration provides, in relevant part:

> (B) <u>Parking Elements</u>. The following limited common elements ("parking elements") are shown in green on the Condominium Map:
>
> a. parking stalls on the 1st, 2nd, 3rd, 4th and 5th floors of the building numbered 1 through 106 on the Condominium Map, which are appurtenant to and for the exclusive use of Apartment 3206. The Apartment Owner of any apartment to which any parking stall is appurtenant shall have the right from time to time with the consent of his mortgagee, if any, to transfer such parking stall to another Apartment in the Project by joining, with the Apartment Owner of such other Apartment, in an amendment of this Declaration and their respective condominium conveyance documents. Such amendment shall be effective only upon recording the same of the record in the Bureau of Conveyances. Developer hereby gives its irrevocable consent to all such parking stall transfers.

11

Furuyas.  Given the Hawaiʻi Supreme Court's decision in <u>Furuya I</u>, the Furuyas do not possess the leased fee interest in the 106 parking stalls.  Thus, to the extent the Furuyas purport to convey a leased fee interest in the parking stalls to Unit 3207, they have no right to do so because they only possess a leasehold interest in those parking stalls.

The issue of the Furuyas' rights to the leased fee interest in the 106 parking stalls was decided in <u>Furuya I</u>.  It is the identical issue that was required to be decided in this case to ultimately determine the Furuyas' rights to transfer the parking stalls.  Thus, the issue decided in the prior adjudication is identical to the one presented in this case, and the first element for issue preclusion is met.

Further, the issue of the Furuyas' rights to the leased fee interest in the 106 parking stalls was essential to the prior suit.  Notwithstanding the Furuyas' arguments to the contrary, the central issue in <u>Furuya I</u> was whether the Furuyas had a right to specific performance, *i.e.*, to purchase the leased fee interest in Unit 3206 and the appurtenant 106 parking stalls. Deciding this issue was essential to the final judgment in that case, and thus the third element of issue preclusion is met.

Inasmuch as the four elements of the issue preclusion test have been satisfied, we hold the Furuyas were precluded from re-litigating whether they had rights to the leased fee interest to the 106 parking stalls.  <u>See</u> <u>Dorrance</u>, 90 Hawaiʻi at 150, 976 P.2d at 911.  Thus, the Circuit Court properly granted summary judgment for the AOAO.[12]  Moreover, the Circuit Court did not err in rejecting the Furuyas' claim that the governing documents permitted transfer of the parking stalls, because the CCD only allows the transfer of the same rights the assignor possesses and the Furuyas do not hold a leased fee interest in the parking stalls.

---

[12]  Because we affirm the Circuit Court's ruling based on the application of collateral estoppel (issue preclusion), we do not address the Furuyas' claims that the Circuit Court erred in ruling against them on grounds of judicial estoppel and Hawaii Revised Statutes (**HRS**) § 514A-14.

**B.  The Circuit Court Properly Awarded the AOAO Attorneys' Fees**

We review the Circuit Court's award of attorneys' fees and costs for abuse of discretion.  Booker v. Midpac Lumber Co., Ltd., 65 Haw. 166, 171, 649 P.2d 376, 379-80 (1982).

In a brief one-paragraph argument that fails to cite any legal authority, the Furuyas summarily assert the Circuit Court erred in awarding the AOAO attorneys' fees because the Circuit Court's Judgment was in error and the award was excessive and inadequately described.  They cite only their memorandum in opposition to the AOAO's motion for attorney's fees (**Memorandum in Opposition to Motion for Attorney's Fees**) filed in the Circuit Court, without further elaboration.  The Furuyas essentially fail to support this point of error with any substantive argument.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived").

Even if we consider the Furuyas' Memorandum in Opposition to Motion for Attorney's Fees filed in the Circuit Court, they argued that because the AOAO's Complaint and First Amended Complaint failed to seek enforcement of a provision in the Declaration, the AOAO is not entitled to attorney's fees and costs pursuant to HRS § 514B-157(a)(3) (2006).

HRS § 514B-157(a)(3) provides:

> (a) All costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of the association for:
>
>     . . . .
>
>     (3) Enforcing any provision of the declaration, bylaws, house rules, and this chapter, or the rules of the real estate commission;
>
> against an owner, occupant, tenant, employee of an owner, or any other person who may in any manner use the property, shall be promptly paid on demand to the association by such person or persons; provided that if the claims upon which the association takes any action are not substantiated, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to such person or persons by the association.

(Emphasis added.)  Pertaining to the application of the CCD, the Declaration and Restated Declaration both provide:

13

> 13.   <u>Administration of Project</u>. The administration of the Project shall be governed by this Declaration, the Bylaws, and the Condominium Conveyance Document conveying to each owner his interest in his apartment. Each . . . owner shall comply strictly with the Declaration, Bylaws and Condominium Conveyance Document.

Based on the 2013 Complaint, in which the AOAO sought declaratory relief regarding the Furuyas' purported conveyance of the 106 parking stalls, it was reasonable for the Circuit Court to award attorneys' fees and costs.  The 2013 Complaint alleges the following in Count I for declaratory relief:

> 19. <u>Pursuant to the Project's governing documents</u>, the Parking Elements are limited common elements of the Project.[13]
>
> 20. The <u>Condominium Conveyance Document</u> for Apartment No. 3206 included the Parking Elements as easements appurtenant to that apartment.
>
> 21. The Defendants possess the right to use the limited common element Parking Elements <u>pursuant to their leasehold ownership</u> of Apartment No. 3206.
>
> 22. Thus, the Defendants' property ownership interest in the Parking Elements was leasehold.
>
> 23. Therefore, the Defendants could not, and cannot in the future, convey anything more than a leasehold interest in the Parking Elements via their Transfer Amendment.
>
> 24. Defendants disagree with the Association's position regarding such conveyance of the Parking Elements.
>
> 25. The Association is therefore entitled to a ruling by the Court that the transfer of the Parking Stalls and Remaining Portions from Apartment No. 3206 to Apartment No. 3207 via the Transfer Amendment did not convert the Defendants' property interest in the limited common element Parking Elements from leasehold to "fee simple."
>
> 26. The Association is further entitled to a ruling by the Court that the Transfer Amendment must be amended to contain restrictive covenants that: (a) Apartment No. 3207 holds a leasehold interest in the Parking Stalls and Remaining Portions of Apartment No. 3206; (b) any future transfer(s) of the Parking Elements will not affect the leasehold nature of such property interests; (c) all future transfers must include a provision expressly stating that the leasehold interest in the Parking Elements reverts back to the Association as the leased fee owner upon the expiration of the term at midnight on April 27, 2054; and (d) such covenants will be binding on all successors and assigns to such property interests.

---

[13]   The Declaration and Restated Declaration provide that the Parking Elements, including the subject 106 parking stalls appurtenant to Unit 3206, are limited common elements.

(Emphases added.)  Considering that the Declaration and Restated Declaration both provide that the Pacific Monarch is partly governed by the CCD and that the CCD should be strictly complied with, it is a fair assessment that the AOAO sought enforcement of provisions of the declarations in the 2013 Complaint when it challenged the Furuyas' attempt to convey more than a leasehold interest in the 106 parking stalls without the necessary restrictive covenants as required by the CCD.  See Article IV, Section 6 of CCD.

To the extent the Furuyas claimed in the Circuit Court that the AOAO should not have been awarded attorneys' fees and costs based on the First Amended Complaint, this argument is without merit considering the First Amended Complaint is virtually identical to the 2013 Complaint except that it includes an alternative request for relief:

> As alternative relief, the Association is entitled to a ruling that the Transfer Amendment is null and void, and the Court should issue an order or writ directing the Bureau of Conveyances, State of Hawaiʻi, to take any and all necessary action to expunge the Transfer Amendment from it [sic] records.

This alternative request for relief also seeks enforcement of the declarations.  It requests that the Circuit Court void the Transfer Amendment, rather than amend it as in the 2013 Complaint, because the Transfer Amendment fails to comply with the CCD, which in turn does not adhere to the express provision in the declarations.

We conclude the Circuit Court did not err in awarding attorneys' fees to the AOAO.

### III.  Conclusion

Based on the above, the following entered by the Circuit Court of the First Circuit are affirmed:

(1) "Judgment," filed October 6, 2017;

(2) "Order Denying Defendants Clarence O. Furuya and Lona Lum Furuya's Motion for Summary Judgment," filed April 20, 2017;

15

(3) "Order Granting Plaintiff Association of Apartment Owners of Pacific Monarch, Inc.'s Motion for Summary Judgment Against Defendants Clarence O. Furuya and Lona Lum Furuya on Plaintiff's First Amended Complaint," filed May 24, 2017; and

(4) "Order Granting in Part and Denying in Part 'Plaintiff Association of Apartment Owners of Pacific Monarch, Inc.'s Motion for Award of Attorney's Fees and Costs Against Defendants Clarence O. Furuya and Lona Lum Furuya'," filed December 27, 2017.

DATED:  Honolulu, Hawaiʻi, May 23, 2023.

On the briefs:

George W. Van Buren,
John B. Shimizu,
(Van Buren & Shimizu LLP)
for Defendants-Appellants

Matt A. Tsukazaki,
(Li & Tsukazaki) and
Lance S. Fujisaki (Anderson
Lahne & Fujisaki LLP)
for Plaintiffs-Appellees

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge